UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCINE GRENIER,

      Plaintiff,

v.                                                       CASE No. 8:11-CV-2083-T-27TGW

MARLOW YACHTS, LTD. and
MARLOW MARINE SALES, INC.,

      Defendants.

---

## REPORT AND RECOMMENDATION

The plaintiff has filed a complaint asserting breach of warranty and fraudulent misrepresentation claims against the defendant, Marlow Yachts, Ltd.[1]   The plaintiff alleges that the defendant failed to make warranted repairs to the M/Y Bohemia III ("the vessel"), and that the defendant's representative, acting on behalf of the defendant, made fraudulent statements to the plaintiff in order to induce the purchase of the vessel.

---

[1] The remaining claims in the complaint pertain only to the other defendant, Marlow Marine Sales, Inc. (see Doc. 1, pp. 6-10). Those allegations are not considered in this report and recommendation. Consequently, the term "defendant" refers only to Marlow Yachts, Ltd.

The defendant has filed a motion to dismiss on the ground of lack of personal jurisdiction (Doc. 13). Because the papers submitted on that question left the matter unclear, an evidentiary hearing was conducted. However, the short presentations by the parties were not particularly helpful. Consequently, I recommend that the issue of personal jurisdiction of Marlow Yachts, Ltd., be deferred for trial. Alternatively, I recommend that the motion be denied, subject to the defendant's ability to reassert the challenge.

I.

Marlow Explorer luxury yachts are built at the Marlow-Norseman Shipyard in China. The defendant, Marlow Yachts, Ltd., is a Bermuda corporation with offices in Bermuda and the Fujian Province near Xiamen, China. It manufactures the yachts along with Norseman Shipyard Ltd., Inc., a manufacturing facility which is partially owned by the defendant. The defendant constructs the exhaust systems, electrical panels, metal components, fittings, shocks, rollers, and hardware (Doc. 58, p. 2). The defendant also performs quality control of the yachts during construction, and it "conducts the most critical Sea trial in China on each and every yacht to test every item on the yacht ... and ensure everything is working properly and

performance parameters are met or exceed[ed]" (id., pp. 2-3). A limited warranty is provided by the defendant for each yacht it manufactures (Docs. 1-3, 1-4).

Upon completion of a yacht's construction, it is sold to an authorized dealer and delivered to that dealer by a distributor. The dealer then sells the yacht to the purchaser.

Marlow Marine Sales, Inc., a Florida corporation located in Snead Island, Florida, is an authorized dealer of the defendant's yachts. Marlow Yachts Limited, Inc., also a Florida corporation, (and which needs to be distinguished from defendant Marlow Yachts, Ltd.) is the sole distributor of Marlow Explorer yachts sold throughout the world.

David Marlow is the chairman and Michael Cannova is the president of the defendant, Marlow Marine Sales, and Marlow Yachts Limited, Inc.

In 2007, the plaintiff, Francine Grenier, and her husband, Pierre Grenier, both residents of Canada, attended a boat show in Miami, Florida (Doc. 1, p. 2). At that time, the Greniers spoke with Marlow regarding their interest in purchasing a white Marlow Explorer yacht and the option of

painting the hull of the vessel blue at a later time (id.). The plaintiff asserts that, during this conversation, Marlow discussed an exterior trim option with the Greniers (id., pp. 2-3). Marlow indicated that scratches or cracks on a white hull painted blue would reveal the white gelcoat underneath the paint, and the option of a blue awlgrip coating of paint on the hull included a blue colored gelcoat (id.).

On February 19, 2007, the Greniers entered into an agreement with Marlow Marine Sales for the purchase of a new Marlow Explorer, 72E Series, with a colored gelcoat on the hull (id., p. 3; Doc. 1-1). Marlow was listed as the salesman on the bill of sale (Plaintiff's Exhibit 1). The Greniers subsequently transferred their interest in the vessel to the plaintiff, Mrs. Grenier (Doc. 1, p. 4; Doc. 1-2). The sale closed on January 27, 2010 (Doc. 1, p. 4).

The plaintiff brought this action alleging claims of breach of warranty and fraudulent misrepresentation against the defendant (Doc. 1).[2] The plaintiff asserted that she discovered defects in the vessel's hull,

---

[2]Contrary to the defendant's contention (Doc. 56, p. 2 n. 1), the fraud claim in count IV, reasonably construed, alleges a claim of fraud against both Marlow Yachts, Ltd., and Marlow Marine Sales.

plumbing, electrical system and fittings, and other equipment, and that the

defendant, by refusing to correct these defects, breached the limited warranty

(id., pp. 4-6). The defendant's warranty procedures state, in pertinent part

(Doc. 1-4, p. 1) (emphasis in original):

> For yachts cruising outside Florida's West coast
> this [program allowing warranty repairs elsewhere]
> removes the need to return the yacht to the
> dealership and allows for proper reimbursement of
> expenses that are covered under the written
> warranty, **except for any items occurring within**
> **the first 60 days of delivery.** Marlow Yachts, Ltd.
> wishes its authorized dealerships to make the initial
> adjustments required on your yacht so it is required
> that these adjustments be done only at the selling
> dealer's premises.

The plaintiff further alleged that Marlow, acting on behalf of the defendant

and Marlow Marine Sales, made fraudulent statements that induced the

Greniers to purchase the vessel (Doc. 1, p. 10).

In response to the complaint, the defendant moved to dismiss for

lack of personal jurisdiction (Doc. 13).[3]   The motion is supported by the

---

[3]The defendant also argued that the complaint should be dismissed for insufficient
service of process (Doc. 13, pp. 18-20). However, at the hearing on May 24, 2012, the
defendant indicated that the issue of insufficient service of process has been abandoned.

Affidavit of David E. Marlow (Doc. 14).[4] The plaintiff filed a response and the Declaration of Pierre Grenier (Docs. 19, 19-7). In her response, the plaintiff alleged that this court has jurisdiction over the defendant pursuant to the Florida long-arm statute, §48.193, Fla. Stat., and §48.181(3), Fla. Stat. The motion was referred to me for a report and recommendation (Doc. 22).

Oral argument on the motion was conducted before me on May 24, 2012. At that time, the defendant submitted supplemental affidavits from Marlow and Cannova.

Upon consideration of the parties' memoranda and oral argument, it appeared that the presentation of evidence would assist with the resolution of this matter. I therefore issued an Order setting an evidentiary hearing on two aspects of the jurisdictional issue (Doc. 49). The evidentiary hearing was held before me on June 25, 2012.

At the hearing, Pierre Grenier testified regarding the plaintiff's breach of warranty claim. Grenier stated that he and the plaintiff attended a boat show in Florida, where they spoke with Marlow regarding their interest

---

[4]The motion to dismiss was also supported by the Affidavit of Michael F. Cannova (Doc. 15). This affidavit only addressed the now abandoned issue of insufficient service of process.

in buying a yacht.  The Greniers purchased the vessel from Marlow Marine Sales, and Marlow was the salesman.  The Greniers' interest in the vessel was subsequently transferred to the plaintiff.

Prior to delivery, which Grenier testified occurred sometime around the closing date of January 27, 2010, the Greniers made a reservation to store the vessel at Riviera Dunes Marina for three months.  Grenier stated that the purpose of the reservation was twofold: (1) to allow the Greniers to visit the Tampa Bay area, and (2) to be close to the dealer so that the necessary commissioning could be completed.  However, he later indicated that, due to overcrowding at Marlow Marine Sales' premises, the Greniers were forced to move the vessel to the marina.  With the assistance of Marlow Marine Sales, the Greniers relocated the vessel to the marina shortly after the closing.

After taking delivery of the vessel, the Greniers were informed that there was a defect with the vessel's generator.  In addition, the Greniers discovered other manufacturing defects with the vessel.  The Greniers discussed these defects with Joe Hackleburg, a Marlow Marine Sales employee, and Bill Thomas, the sales director of Marlow Marine Sales.  In August 2010, Grenier created a list of items needing repair on the vessel (see

Plaintiff's Exhibit 3), and he delivered that list to Hackleburg. The first twenty-eight items on this list were defective or incomplete when the Greniers took delivery of the vessel.

Hackleburg informed Grenier that repairs of the defective items on the list could be performed while the vessel was "on the road." Grenier indicated that employees of Marlow Marine Sales worked on the vessel while it was stored at the marina. Repairs were also performed on the vessel after the Greniers moved it to the Bahamas in April 2010.

Cannova then testified regarding the issues of control and breach of warranty. With respect to control, Cannova stated that he is the president and Marlow is the chairman of the defendant, Marlow Marine Sales, and Marlow Yachts Limited, Inc. He indicated that the defendant has no control over Marlow Marine Sales or Marlow Yachts Limited, Inc. The defendant does not perform business within the state of Florida; it does not, on its own or though any other Marlow entity, sell, lease or consign yachts in Florida. Cannova further stated that the defendant does not import or deliver yachts into the United States, and it has no control over the manner of delivery or the final destinations of the yachts.

Cannova explained that, after a yacht is constructed, it is purchased by one of three sales dealers, located in Australia, Spain, and Snead Island, Florida. When the dealer remits payment to the defendant, the yacht's title is transferred from the defendant to the dealer. At that point, the defendant loses control of the yacht. The defendant delivers the yacht to Marlow Yachts Limited, Inc., the sole distributor of Marlow Explorer yachts, for shipment to the dealer. The purchasing dealer works with Marlow Yachts Limited, Inc., to coordinate delivery of the yacht. For a yacht entering the United States and going through customs, the dealer is listed as the importer of record.

Marlow Marine Sales has a contractual relationship with Marlow Yachts Limited, Inc. Marlow Marine Sales does not have a contractual relationship with the defendant.

Cannova further testified that there are no written contracts between the defendant and Marlow Yachts Limited, Inc. Rather, an oral distribution agreement was formed between the entities. During contract negotiations, Cannova and Marlow wear different "hats," depending on the situation. Cannova believes Marlow was wearing the defendant's hat and he

was wearing Marlow Yachts Limited, Inc.'s hat when the distribution agreement was negotiated.

Although he could not recall exact numbers, Cannova estimated that, for this year, two-thirds of the yachts manufactured by the defendant have been purchased through Marlow Marine Sales.

Turning to the issue of breach of warranty, Cannova stated that, despite the language in the warranty procedures, it is not a strict rule that repairs be made only at the dealer's location. In this case, the Greniers were not forced to move the vessel to the marina. Also, neither Marlow Marine Sales nor the defendant required that the Greniers' vessel remain at the dealer's premises for 60 days following delivery. Further, the entities had no objection to the vessel leaving the country in April 2010.

The 60-day provision in the warranty pertains to initial adjustments and commissioning. A defect in the gelcoat would have occurred in the manufacturing process in China, before the first 60 days after delivery. A gelcoat defect cannot be repaired within a 60-day period.

Cannova explained that "delivery" and "closing" are not the same thing. Official delivery typically occurs after commissioning is complete, when the customer is satisfied and ready to take the boat. Cannova

indicated that, in this case, delivery took place about the time the Greniers left the marina in April 2010.

Cannova further testified that the defendant warrants the yachts it manufactures, but it does not control or direct those repairs. The dealer, in this case Marlow Marine Sales, arranges for the performance of warranty repairs. Marlow Marine Sales sent workers to both the Bahamas and Fort Lauderdale, Florida, to work on the Greniers' vessel.

Hackleburg made most of the warranty decisions regarding the Greniers' vessel. However, after boarding and examining the vessel with Grenier at the Marlow Marine Sales facility in Florida, Cannova authorized the replacement of the vessel's shower boards. Cannova indicated that he was acting on behalf of Marlow Marine Sales because he was at that entity's premises when he approved the replacement.

Finally, Cannova stated that Hackleburg works for Marlow Marine Sales and Marlow Yachts Limited, Inc. Hackleburg is not an employee of the defendant. Any warranty decisions made by Hackleburg were made on behalf of Marlow Marine Sales or Marlow Yachts Limited, Inc.

At the close of the evidentiary hearing, I directed the parties to submit supplemental memoranda. Those papers have been filed (Docs. 54, 56).

## II.

In order to establish personal jurisdiction over a non-resident defendant, a plaintiff must show, first, that jurisdiction is authorized by statute, and, second, that the exercise of jurisdiction is consistent with due process. Sun Bank, N.A. v. E.F. Hutton & Co., Inc., 926 F.2d 1030, 1033 (11th Cir. 1991).

Initially, these requirements may be satisfied simply by allegations in the complaint that are sufficient to make out a prima facie case of jurisdiction. Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999). However, if the defendant challenges the jurisdictional allegations by affidavit, the plaintiff bears the burden of proving by affidavit or other evidence that the court has jurisdiction over the defendant. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996). To the extent that the parties' affidavits conflict, all reasonable inferences are to be made in favor of the plaintiff. Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990). Moreover, where the parties'

affidavits present conflicting evidence, the court must either deny the motion and postpone the jurisdictional challenge until trial, or hold a preliminary evidentiary hearing. Chalwest (Holdings) Ltd. v. Ellis, 924 F.2d 1011, 1014 (11th Cir. 1991).

In this case, an evidentiary hearing was scheduled because the parties' submissions were conflicting and insufficient. Unfortunately, the brief evidentiary presentations were not particularly helpful. The pertinent facts are not clearly established, so that I do not feel comfortable resolving the jurisdictional issues. Moreover, the holding of the evidentiary hearing raises a murky question of the standard of the burden of proof, and the parties have not addressed that issue.

Where no evidentiary hearing is held, the plaintiff need only demonstrate a prima facie case of personal jurisdiction, which is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict (now called judgment as a matter of law). Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). In that circumstance, all reasonable inferences are construed in favor of the plaintiff. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996). On the other hand, where the issue is deferred until trial (as it can be), the plaintiff must prove personal

jurisdiction by a preponderance of the evidence. <u>Walk Haydel & Associates, Inc.</u> v. <u>Coastal Power Production Co.</u>, 517 F.3d 235, 241 (5th Cir. 2008).

Under the circumstances here, the standard of burden of proof is not clear. A leading treatise has stated: "In assessing the evidence, the court may apply a preponderance-of-evidence standard or a standard intermediate between the preponderance-of-evidence guideline and a prima facie showing." 4 Wright & Miller, <u>Federal Practice and Procedure</u>: Civil 3d §1067.6, p. 558.

In this case, the application of the preponderance-of-evidence standard is not warranted. The evidentiary hearing took place at an early stage of the case and before meaningful discovery, if any, had taken place (<u>see</u> Doc. 56, p. 2). It seems inappropriate and unfair to the plaintiff to hold her to the standard that would apply if the case had been fully tried. Rather, the proper standard under the circumstances here should be whether the plaintiff had adduced enough to survive a motion for directed verdict, taking all reasonable inferences in her favor.

However, it also seems unfair to the defendant to decide finally the issue of personal jurisdiction based on such a light standard. And it

makes no sense for this court to expend the time and effort on the difficult issue of personal jurisdiction if the decision is only temporary.

Accordingly, in my view, the best approach is simply to defer ruling on the jurisdictional issue until trial, when there could be no doubt that preponderance of the evidence is the proper standard. That conclusion is further supported by the brevity of the evidentiary hearing that did not adequately sharpen the facts. As Judge Posner stated in <u>Rice</u> v. <u>Nova Biomedical Corp.</u>, 38 F.3d 909, 915 (7th Cir. 1994)(citations omitted):

> Certainly if it is infeasible or inconvenient to make a definitive determination of personal jurisdiction on the basis of affidavits or other evidence presented in a pretrial hearing, the district judge can, as with other preliminary questions, defer resolution to the trial.... Presumably he can let the matter ride to trial even if a definitive determination could be made earlier, although normally the better practice is to decide dispositive threshold issues at the outset and spare the parties the burden of a trial.

In this case, there does not seem to be any significant burden imposed on Marlow Yachts, Ltd., if the issue of personal jurisdiction is deferred until trial. Thus, Marlow Marine Sales remains in the case, and both Marlow Marine Sales and Marlow Yachts, Ltd., are represented by the same lawyer. Further, Marlow and Cannova are the individuals that are primarily,

-15-

if not exclusively, responsible for the operation of both Marlow Yachts, Ltd., and Marlow Marine Sales. In short, these two men run both companies. Consequently, Marlow and Cannova will be fully involved in this case whether or not Marlow Yachts, Ltd., remains a party. Under all these circumstances, this is an excellent case for deferral until trial of the issue of personal jurisdiction.

This conclusion is supported further by the claim in Count IV which alleges fraudulent misrepresentations by Marlow on behalf of Marlow Marine Sales and Marlow Yachts, Ltd. (Doc. 1, p. 10). The plaintiff asserts jurisdiction over Marlow Yachts, Ltd., based on this count pursuant to §48.193(1)(b), Fla. Stat., which provides for jurisdiction over an individual "[c]ommitting a tortious act within" Florida. The defendant argues that any statement made by Marlow was made solely on behalf of Marlow Marine Sales. However, the evidence so far seems to indicate that Marlow would easily change positions from representing one entity to the other. Moreover, taking all inferences in favor of the plaintiff, a fact-finder could reasonably conclude that, when making the challenged representations, Marlow was either acting solely on behalf of Marlow Yachts, Ltd., or was acting on behalf of both Marlow Marines Sales and Marlow Yachts, Ltd.

Count IV therefore presents a situation where the issue of personal jurisdiction is intertwined with the merits. In that circumstance, it is appropriate to defer the issue of personal jurisdiction to the trial on the merits. Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 n. 2 (9th Cir. 1977); 2 Moore's Federal Practice, §12.31, p. 12-57 (3d. ed.); see also 4 Wright & Miller, Federal Practice and Procedure: Civil 3d §1067.6, p. 553.

For these reasons, I recommend that the issue of personal jurisdiction be deferred until trial and that the motion to dismiss be terminated.

### III.

Alternatively, the motion to dismiss is appropriately denied. This alternative recommendation, as previously explained, is based upon the burden of proof standard of whether the plaintiff had adduced enough evidence to survive a motion for directed verdict, taking all reasonable inferences in her favor. Under that standard, a reasonable fact-finder could conclude, at this point, that there is personal jurisdiction under the Florida long-arm statutes, and that the exercise of jurisdiction is not unconstitutional.

The plaintiff argues that the defendant's contacts with this state are sufficient to support jurisdiction under Florida's long-arm statute. Among other provisions, the plaintiff relies upon §48.193(2), Fla. Stat., which provides that a defendant "who is engaged in substantial and not isolated activity within" Florida is subject to the jurisdiction of the courts of Florida. This provision is informed by §48.181(3), which states:

> Any person, firm, or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

A plaintiff relying on §48.181(3) to establish jurisdiction over a non-resident defendant must show that the defendant possessed some degree of control over the distributor with which it deals in Florida or over the product itself. Dinsmore v. Martin Blumenthal Associates, Inc., 314 So.2d 561, 566 (Fla. 1975); American Baseball Cap, Inc. v. Duzinski, 359 So.2d 483, 487 (Fla. App. 1978).

The primary focus of the plaintiff's argument is the defendant's interrelationship with other Marlow entities, which are Florida corporations. In this regard, the plaintiff asserts that "the activities of [the defendant,] as conducted by [its] only two corporate actors, are indistinguishable from their actions purportedly on behalf of the other entities. The result is that [the defendant] exercises control over [its] distributor [Marlow Yachts Limited, Inc.] and dealer [Marlow Marine Sales] such that it engages in substantial and not isolated business activities in this State" (Doc. 54, p. 5).

At the evidentiary hearing, Cannova testified that he is the president and Marlow is the chairman of the defendant as well as Marlow Marine Sales and Marlow Yachts Limited, Inc.; it is a "complicated corporate structure." Cannova further stated that he and Marlow have engaged in contract negotiations on behalf of the different entities, with each individual wearing one of the corporate entity's "hat" for the occasion. The plaintiff thus argues that, "[t]his is not a case of two completely independent companies that entered into a distributorship contract. It is an internal arrangement between partners...." (id., p. 7).

The defendant asserts that the requisite degree of control does not exist here (Doc. 56, pp. 6-11). Thus, the defendant argues that it does not

control either Marlow Marine Sales or Marlow Yachts Limited, Inc. In
affidavits, it asserts that each of these companies are "separate and distinct
entities with different responsibilities and operations," and the defendant has
no control over the operations of Marlow Marine Sales and Marlow Yachts
Limited, Inc. (Doc. 58, p. 5; Doc. 59, pp. 5-6). The defendant states further
that it transfers the title of a yacht to the dealer in China, and claims that, at
that point, it loses control over the yacht (Doc. 56, p. 10).

However, all Marlow Explorer yachts are distributed by Marlow
Yachts Limited, Inc. Consequently, the yachts sold by Marlow Marine Sales,
which is located in Palmetto, are delivered by the distributor, Marlow Yachts
Limited, Inc. While it might be questionable whether Marlow Marine Sales
falls within one of the categories in §48.181(3), Marlow Yachts Limited, Inc.,
clearly does.

Furthermore, viewing the facts in the light most favorable to the
plaintiff, a reasonable fact-finder could conclude that the defendant has
control of Marlow Yachts Limited, Inc. As testified to by Cannova, there is
only an oral distribution agreement between the two parties. That agreement,
moreover, was arrived at by Cannova and Marlow conducting negotiations
while each wore different hats. Even if that scenario is not discounted as

-20-

implausible, it would permit a reasonable fact-finder to conclude that the defendant manufacturer has control over its sole distributor. Therefore, under the lower standard of proof, the plaintiff has sufficiently shown jurisdiction over Marlow Yachts, Ltd., pursuant to §48.181(3) and §48.193(2).

The plaintiff also contends that the elements of the Florida long-arm statute are satisfied by virtue of the defendant breaching a contract in Florida by failing to perform acts required by the contract to be performed in Florida. §48.193(1)(g), Fla. Stat. To find jurisdiction under §48.193(1)(g), the plaintiff must demonstrate that "the defendant failed to perform an act or acts whose performance was to be in Florida and that such breach formed the basis for the cause of action for which relief is sought by the plaintiff." Cosmopolitan Health Spa, Inc. v. Health Industries, Inc., 362 So.2d 367, 368 (Fla. App. 1978).

The plaintiff argues that the defendant's failure to make certain warranty repairs to the vessel breached the defendant's limited warranty. In pertinent part, the defendant's warranty procedures state (Doc. 1-4, p. 1) (emphasis in original):

> For yachts cruising outside Florida's West coast
> this [program allowing warranty repairs elsewhere]
> removes the need to return the yacht to the

> dealership and allows for proper reimbursement of
> expenses that are covered under the written
> warranty, **except for any items occurring within
> the first 60 days of delivery.** Marlow Yachts, Ltd.
> wishes its authorized dealerships to make the
> initial adjustments required on your yacht so it is
> required that these adjustments be done only at the
> selling dealer's premises.

Based on this language, only warranty repairs occurring within the first 60

days of delivery need to be performed at the authorized dealer's premises in

Florida; repairs outside of that period can be made anywhere in the world.

Consequently, §48.193(1)(g) provides a jurisdictional basis only for warranty

work on items occurring within the first 60 days after delivery because those

are the only acts required by the contract to be performed in Florida.

The plaintiff claims that she discovered numerous defects in the

hull, plumbing, electrical system and fittings, and other equipment on the

vessel, all of which were covered under the terms of the defendant's warranty

(Doc. 1, p. 5).  At the evidentiary hearing, Grenier presented a list of items

needing repair and said that items one to twenty-eight were discovered in the

first 60 days (see Plaintiff's Exhibit 3).

The defendant's attempt to avoid §48.193(1)(g)'s coverage is

unpersuasive.  Thus, the defendant argues that the defects identified in the

complaint are not related to the warranty provision because they are "manufacturing defects that could not have occurred within the first sixty days of delivery" (Doc. 56, p. 16). However, the exclusion of manufacturing defects from this provision would mean that those defects occurring within the manufacturing process are not warranted at all. It would seem unlikely that this is what the defendant intended. Thus, at this point, the defendant has failed to show that the scope of the limited warranty procedures is as narrow as it now suggests.

To the extent the defendant mentions "initial adjustments," that is beside the point. The plaintiff is not asserting any claim based upon a failure to make initial adjustments.

The defendant also contends that neither its limited warranty nor its warranty procedures require it to perform any acts in Florida (id., pp. 13-14). In this regard, it states that "the only acts the Limited Warranty or the Warranty Procedures state [the defendant] will perform at all are to potentially arrange for repairs and/or reimburse for legitimate warranty

repairs, neither of which are required to or ever take place in Florida" (id., p. 13) (emphasis in original).[5]

This is a very crabbed reading of the warranty provisions. Those provisions obligate the defendant's dealer, Marlow Marine Sales, to make warranty repairs on the defendant's behalf.   Moreover, the warranty provisions drafted by the defendant require the plaintiff to take the yacht to Marlow Marine Sales during the first 60 days.  If the warranty repairs are not carried out, the failure to act in Florida is properly attributed to the defendant.

In addition, the defendant points out that, at the hearing, Cannova indicated that rule requiring adjustments within 60 days of delivery to be performed at the selling dealer's premises is not strictly enforced. That may be so, but it does not change the language of the warranty, which explicitly states that repairs within the first 60 days after delivery are to be

---

[5]The defendant refers to the language of the limited warranty that provides (Doc. 56, p. 14; Doc. 1-3, p. 2):

> All warranty repairs will be arranged by [the defendant] or an authorized dealer.  Repairs as appropriate will proceed with the warranty procedures on your behalf.  Repairs performed under this warranty will be made at our factory, an authorized dealer or another repair facility that we select. Transportation to and from the repair facility is at your expense. When warranty service is completed, submit a warranty claim to [the defendant] for reimbursement.

"done only at the selling dealer's premises" (Doc. 1-4, p. 1). There is nothing in the language that entitles the plaintiff to a waiver of that requirement, and the defendant has the right to enforce it. Accordingly, in the first 60 days, warranty repairs are required to be performed in Florida within the meaning of §48.193(1)(g).

The second aspect of the jurisdictional issue is the constitutional inquiry. That inquiry also is undertaken with the lower standard of burden of proof. Under that standard, the exercise of personal jurisdiction over Marlow Yachts, Ltd., satisfies due process.

The due process inquiry asks, first, whether the defendant has "minimum contacts" with the forum state. Second, the contacts must be considered along with other factors to determine whether the assertion of jurisdiction comports with the principles of "fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310 (1945); Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 670 (11th Cir. 1993).[6]

---

[6]As explained by the Florida Supreme Court in Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989), "[t]he mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts."

In the Eleventh Circuit, minimum contacts must meet three criteria (Sculptchair, Inc. v. Century Arts, Ltd., supra, 94 F.3d at 631):

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that [it] should reasonably anticipate being haled into court there.

See Posner v. Essex Ins. Co., Ltd., supra, 178 F.3d at 1220.

The defendant argues that placing its product in the stream of commerce, without more, does not satisfy the minimum contacts requirement (Doc. 13, pp. 16-17). Contrary to its assertion, the defendant does more than simply place its yachts into the stream of commerce. The defendant sells its yachts directly to a Florida dealer, and it distributes all of its yachts, no matter where they are being delivered, through a Florida distributor. Further, the defendant required warranty repairs within the first 60 days after delivery to be performed at the Florida dealer's location.

In addition, the plaintiff has attached to its response numerous press releases taken from the www.marlowexplorer.com website (see Doc. 19-6). A number of those press releases from different years expressly state

-26-

that Marlow Yachts, Ltd., is displaying a yacht at a south Florida boat show (see, e.g., id., pp. 3, 7, 8, 12). Other appearances at a south Florida boat show announcing a new boat are unclear as to the Marlow entity that is making the announcement, while in some instances, it is said to be Marlow Marine Sales or Marlow Yachts Limited, Inc. This reflects that the Marlow companies do not always make efforts to keep the separate identities distinct. For example, at the February 2009 Miami International Boat Show, Marlow Yachts Limited, Inc. – the company that purportedly is just the distributor – won an award for being the most innovative manufacturer (id., p. 12). Under these circumstances, when the reasonable inferences are taken in favor of the plaintiff, it is reasonable to infer that Marlow Yachts, Ltd., displays a boat annually at a south Florida boat show.

Moreover, one of the 2011 press releases announced that a Marlow entity purchased a historic shipyard on the Miami River (id., p. 5). Of course, there is also the strange negotiating scenario involving Marlow and Cannova wearing "hats" for either Marlow Yachts, Ltd., and Marlow Yachts Limited, Inc.

In sum, the plaintiff's breach of warranty claim and her fraud claim arise from the defendant's contacts with Florida. Further, those

contacts establish purposeful availment of the privilege of conducting activities in Florida. And the defendant's contacts are such that it could reasonably anticipate being haled into court here.

Finally, it must be determined whether the exercise of personal jurisdiction over the defendant would transgress traditional notions of fair play and substantial justice. Posner v. Essex Ins. Co., Ltd., supra, 178 F.3d at 1220-21; Madara v. Hall, 916 F.2d 1510, 1517 (11th Cir. 1990). This requires consideration of the burden on the defendant, Florida's interest in adjudicating the suit, the plaintiff's interest in obtaining effective relief, the interests of the interstate judicial system in using resources efficiently, and the interests of the states in furthering shared substantive policies. Posner v. Essex Ins. Co., Ltd., supra, 178 F.3d at 1221.

Relying on Northern Insurance Co. of New York v. Construction Navale Bordeaux, 2011 WL 2682950 (S.D. Fla. 2011), the defendant asserts that jurisdiction would offend fair play and substantial justice because neither party to the instant case is a resident of Florida and the plaintiff asserts claims under federal warranty law. Therefore, the defendant argues that the State of Florida has minimal interest in the outcome of this litigation (Doc. 13, pp. 17-18).

The defendant's argument that finding personal jurisdiction in Florida would be unfair is not persuasive. Florida has a strong interest in seeing that people who come to Florida to attend such events as a boat show are not defrauded and have their contracts honored if they make purchases at those events. Moreover, the plaintiff should be able to pursue claims against the boat manufacturer in the state where he bought the boat, instead of having to chase the defendant down in either Bermuda or China.

Further, although the defendant is a Bermuda corporation with offices in Bermuda and China, the defendant's chairman and president are residents not only of Florida, but of this area. Therefore, any argument that it would be an undue burden to defend a lawsuit in Florida is unavailing. Consequently, the defendant has not shown jurisdiction would offend the notions of fair play and substantial justice.

IV.

For the foregoing reasons, I recommend that ruling on the defendant's motion to dismiss be deferred until trial and that the motion be

terminated.  In the alternative, I recommend that the motion be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST 22, 2012

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).