UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCINE GRENIER,

    Plaintiff,

v.                                                      Case No.: 8:11-cv-2083-JDW-TGW

MARLOW YACHTS, LTD., et al.,

    Defendants.

_____/

## ORDER

**BEFORE THE COURT** is the Magistrate Judge's thoughtful and thorough Report and Recommendation (Dkt. 60), in which he recommends that Marlow Yachts, Ltd.'s ("MYL") motion to dismiss for lack of personal jurisdiction (Dkt. 13) be deferred until trial, or alternatively, denied. MYL filed objections (Dkt. 64), to which Grenier responded (Dkt. 65). The Report and Recommendation, objections, and response have been carefully considered in conjunction with a thorough review of the file, including a transcript of the evidentiary hearing (Dkt. 62). The "portions of the report [and] specified proposed findings or recommendations to which objection [was] made" have been reviewed *de novo*. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).

Upon consideration, the Magistrate Judge's alternative recommendation in Section III of the Report and Recommendation that the motion to dismiss be denied is adopted. The evidence sufficiently establishes personal jurisdiction over MYL pursuant to Fla. Stat. § 48.193(1)(g). Accordingly, the Court determines that it is unnecessary to defer ruling on the motion to dismiss.

### Discussion

MYL's initial objection is to the standard for determining personal jurisdiction applied by the Magistrate Judge. The Magistrate recommended, considering the early stage of this litigation and the need for further development of the facts, that personal jurisdiction be determined by "whether the plaintiff had adduced enough to survive a motion for directed verdict, taking all reasonable

inferences in her favor." (Dkt. 60, p. 14). While there is authority for application of this standard, *see* 4 Wright & Miller, *Federal Practice and Procedure*: Civil 3d § 1067.6, several district courts in this Circuit, including this Court, have determined that the preponderance of the evidence standard governs the personal jurisdiction inquiry after an evidentiary hearing. *See, e.g., Peavy v. Klausner*, 8:11-CV-0508-T-27EAJ, 2011 WL 3841633, at *1 (M.D. Fla. Aug. 3, 2011), adopted, 2011 WL 3841636 (M.D. Fla. Aug. 30, 2011); *Tommy Bahama Grp., Inc. v. Eagle*, No. 3:09-cv-641-J-32JRK, 2010 WL 3340538, at *2 (M.D. Fla. Aug. 23, 2010); *Resolution Trust Corp. v. Pharaon*, 915 F. Supp. 351, 358 (S.D. Fla. 1996); *Welt Indus., Inc. v. Weingart, Inc.*, 660 F. Supp. 424, 425 (N.D. Ga. 1987). There is no reason to depart from these cases. Grenier must establish personal jurisdiction by a preponderance of the evidence.

MYL next objects to the recommendation that a determination on personal jurisdiction be deferred until trial, arguing that Grenier has had sufficient opportunity to develop and present her case for personal jurisdiction. This Court agrees, although, as noted by the Magistrate Judge, deferral would allow further factual development. Notwithstanding, the parties have had considerable time to conduct jurisdictional discovery, have participated in an evidentiary hearing, and a determination on personal jurisdiction can be made on this record. Grenier has established personal jurisdiction by a preponderance of the evidence.

Personal jurisdiction is determined by a two-step inquiry. First, Grenier must establish facts bringing the action within the Florida's long arm statute. Second, Grenier must demonstrate that the exercise of jurisdiction is consistent with due process. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

Florida's long arm statute authorizes the exercise of jurisdiction over causes of action alleging that a defendant "[b]reach[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(g). In Count I, Grenier alleges that MYL failed to make certain repairs to her vessel in breach of its limited warranty. The warranty provides:

> MARLOW YACHTS LTD warrants to you, the original purchaser, that it will repair or replace those parts of the boat manufactured by them which are found in the reasonable judgment of MARLOW YACHTS LTD to be defective in materials or workmanship . . . .

(Dkt. 1-3, p. 1). The "Warranty Procedures" section provides:

> Since our yachts are capable of traveling great distances we have developed a unique program to allow warranty repairs to be carried out while cruising by a capable repair source. For yachts cruising outside Florida's West coast this removes the need to return the yacht to the dealership and allows for proper reimbursement of expenses that are covered under the written warranty, **except for any items occurring within the first 60 days of delivery**. Marlow Yachts LTD wishes its authorized dealerships to make the initial adjustments required on your yacht so it is required that these adjustments be done only at the selling dealer's premises.

(Dkt. 1-4, p. 1) (emphasis in original).[1]

The Magistrate noted that this warranty requires any items occurring within the first 60 days of delivery to be repaired at the selling dealership which, in this case, is in Florida. The Magistrate correctly concluded that § 48.193(1)(g) is satisfied because Grenier's claim is that MYL failed to repair numerous defects that were discovered within the first 60 days. "Accordingly, in the first 60 days, warranty repairs are required to be performed in Florida within the meaning of § 48.193(1)(g)" (Dkt. 60, p. 25).

The Magistrate also concluded that the 60 day provision extends to defects occurring in the manufacturing process, rejecting MYL's argument that the warranty simply required MYL to arrange for and reimburse repairs, neither of which had to be performed in Florida. The Magistrate similarly rejected the contention that MYL does not strictly enforce the location requirement. MYL does not

---

[1] The last page of the warranty provides the following address for MYL:

> MARLOW YACHTS LTD
> 4202 13th Street Court West
> Snead Island, FL 34221
> TEL: 1-941-729-3370
> FAX: 1-941-729-4955

(Dkt. 1-3, p. 3).

3

object to the Magistrate's conclusion that the items 'occurred' when they were discovered by Grenier. Nor does MYL raise a specific objection to the conclusion that the 60 day provision applies to manufacturing defects or the rejection of its argument that such defects 'occurred' during manufacturing. And notwithstanding the potential dispute over the precise delivery date (Dkt. 60, pp. 7, 11), MYL does not argue that the 60 day period is inapplicable because the warranty items were discovered prior to delivery or more than 60 days after delivery. Rather, MYL raises three straightforward objections to the exercise of jurisdiction under § 48.193(1)(g). None has merit.

First, MYL maintains that its only obligations under the warranty are to arrange for and reimburse repairs, none of which require performance in Florida. MYL repeatedly emphasizes that it "has an agreement with its dealers for the dealers to provide warranty services to the dealer's customers." (Dkt. 64, pp. 19, 20). But it was MYL who expressly warranted that "it will repair or replace those parts of the boat manufactured by them which are . . . defective in materials or workmanship." (Dkt. 1-3, p. 1). As the Magistrate correctly concluded, the failure to make those repairs, which were required to be made in Florida, is properly attributable to MYL. As the Magistrate Judge correctly concluded, "[i]f the warranty repairs are not carried out, the failure to act in Florida is properly attributed to the Defendant." (Dkt. 60, p. 24).

Jurisdiction therefore exists under § 48.193(1)(g), notwithstanding any agreements between MYL and its dealers. *See McCarter v. Bigfoot Indus., Inc.*, 805 So. 2d 1028, 1031-32 (Fla. 4th DCA 2001) (holding § 48.193(1)(g) was satisfied where a buyer alleged that a foreign "warrantor has sales and service agreements with dealers throughout Florida, including seller" and "under these agreements the dealers in Florida performed warranty obligations of warrantor on vehicles made and sold by warrantor").[2]

Second, MYL argues that "the work covered by the 60-day provision is not work that [MYL]

---

[2] MYL's reliance on *Northern Insurance Co. of New York v. Construction Navale Bordeaux* is misplaced because there was "no requirement that the repairs be done in Florida." No. 11-60462-CV, 2011 WL 2682950, at *4 (S.D. Fla. July 11, 2011).

ever is responsible for, whether in Florida or anywhere else." (Dkt. 64, p. 21). MYL contends that the 60 day provision is limited to "initial adjustments," which refers to commissioning matters that are the responsibility of the dealer. But the plain language of the warranty requires that the yacht be returned to the dealer for "<u>any items</u> occurring within the first 60 days of delivery." Nothing in the contract limits "any items" to commissioning items. To be sure, the next sentence does use the phrase "initial adjustments," which Cannova agreed is "a commissioning sort of a t[h]ing." (Dkt. 62, Hr'g Tr., p. 59). But that sentence does not purport to alter the scope of the requirement that the yacht be returned to the dealer for repair of "any items" in the first 60 days.

Further, reading the warranty as a whole, the most sensible construction of the phrase "initial adjustments" is one which includes any items that occur in the first 60 days, not commissioning items. The warranty clearly provides that the 60 day period begins at the time of delivery. And Cannova confirmed that delivery does not typically occur until "after commission is complete." (Hr'g Tr., p. 59).

Third, MYL argues that it did not insist that Grenier have the repairs made at the selling dealer's premises in Palmetto, Florida, as required by the 60 day provision. Instead, the selling dealer performed those repairs at the Riviera Dunes Marina which is also located in Palmetto, Florida, a short distance from the dealer. Subsequent repairs were made "on the road" in locations outside Florida, although it is unclear whether these repairs related to items covered by the 60 day provision. In any event, MYL's argument is unpersuasive. As the Magistrate concluded, there is nothing in the language of the 60 day provision that entitled Grenier to a waiver of the requirement that the yacht be repaired at the selling dealer's premises. MYL had a right to enforce the provision at any time.

Accordingly, MYL's objections to the Magistrate's conclusion that § 48.193(1)(g) applies are without merit. Grenier has established § 48.193(1)(g) by a preponderance of the evidence.

In addition to the contract, Grenier contends that MYL is subject to jurisdiction under § 48.193(1)(b), which applies to defendants "[c]ommitting a tortious act within this state," because David Marlow made certain misrepresentations during the sale of the yacht. The testimony and

5

documentary evidence shows that Grenier purchased the yacht from Marlow Marine Sales, Inc. and that David Marlow was the salesperson. Although there is evidence that David Marlow could easily shift between representing Marlow Marine Sales, Inc. and MYL, Grenier has not shown that he did so when making the sale. On this record, Grenier has not shown by a preponderance of the evidence that David Marlow made any representations at the time of sale on behalf of the manufacturer, MYL, rather than the seller, Marlow Marine Sales, Inc.[3]

Nor has Grenier established, by a preponderance of the evidence, the applicability of § 48.193(2), which provides for jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within this state." She relies on § 48.181(3), which provides, in relevant part:

> Any . . . corporation which sells . . . by any means whatsoever tangible . . . personal property, through . . . distributors to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

Section 48.181(3) only applies where the defendant has "some degree of control" over the distributor or the product itself. *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 566 (Fla. 1975); *American Baseball Cap, Inc. v. Duzinski*, 359 So. 2d 483, 487 (Fla. 1st DCA 1978).

The evidence showed that MYL loses control over each yacht when it transfers title to the dealer in China. And the testimony showed that MYL does not exert control over the business operations of the distributor, Marlow Yachts Limited, Inc. The Magistrate is correct that the directed verdict standard is satisfied by the "implausible" oral agreement negotiated by Cannova (who was president of MYL and the distributor) and Marlow (who was chairman of MYL and the distributor), with one acting on behalf of each entity. But considering the evidence submitted by MYL, these facts

---

[3]The Magistrate never found that David Marlow was acting on behalf of MYL when he made the representations. He simply found that "taking all inferences in favor of the plaintiff, a fact-finder could reasonably" make that conclusion, based on the ease with which David Marlow shifted between representing MYL and representing Marlow Marine Sales, Inc. (Dkt. 60, p. 16).

6

do not establish jurisdiction by a preponderance of the evidence.[4] This conclusion is of little help to MYL, however, because jurisdiction exists over MYL under § 48.193(1)(g), as discussed.

Turning to the second step of the jurisdictional inquiry, the Magistrate concluded that the exercise of personal jurisdiction satisfies the constitutional due process requirements. Although based on a lower standard, the Magistrate's conclusion remains sound under the preponderance of the evidence standard. MYL's objections are not persuasive and are rejected for the reasons stated in the Report and Recommendation.

## Conclusion

Accordingly, the Magistrate Judge's alternative recommendation in Section III of the Report and Recommendation that the motion to dismiss be denied is adopted. Specifically, Part I and Part III (from the first full paragraph of page 21 to the last full paragraph of page 29), and Part IV of the Report and Recommendation are adopted, confirmed, and approved for all purposes, including appellate review, to the extent those parts are not inconsistent with this order. Defendant's motion to dismiss (Dkt. 13) is DENIED.[5] Defendant shall answer the complaint within twenty days.

**DONE AND ORDERED** this 27th day of September, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[4] The Magistrate never found that MYL exercised control over the distributor, Marlow Yachts Limited, Inc., or the yacht after distribution. He simply found that "viewing the facts in the light most favorable to the plaintiff, a reasonable fact-finder could conclude that [MYL] has control of Marlow Yachts Limited, Inc." (Dkt. 60, p. 20).

[5] Plaintiff's argument that personal jurisdiction can be exercised pursuant to Fed. R. Civ. P. 4(k)(2) was raised for the first time in her response to MYL's objections to the Report and Recommendation. She has not offered any explanation for failing to raise this argument before the Magistrate, and therefore, it will not be considered. *See Williams v. McNeil*, 557 F.3d 1287, 1291-92 (11th Cir. 2009).